1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   David Turner Jr. ,                    Case No.:  13cv01133-WQH-BGS

12                            Plaintiff,    **REPORT AND**
                                           **RECOMMENDATION OF U.S.**
13   v.                                    **MAGISTRATE JUDGE GRANTING**
                                           **IN PART AND DENYING IN PART**
14   San Diego Central Jail; #2-5 John Does, **DEFENDANTS' MOTION FOR**
     San Diego County Sheriffs #1 John Doe, **SUMMARY JUDGMENT**
15
16                            Defendant.
17

18              **I.    PROCEDURAL BACKGROUND**

19        David Turner Jr. ("Plaintiff") is a former prisoner[1] of the San Diego County

20   Central Jail, proceeding *pro se* and *in forma pauperis* in this civil rights action filed

21   pursuant to 42 U.S.C. § 1983.  Plaintiff filed a verified Second Amended Complaint[2]

22   ("SAC") on June 13, 2014, which contained three counts of alleged constitutional

23

24   ────────────────

25   [1] Plaintiff currently lists his address as 299 17th Street, San Diego, CA 92101.
     [2] Plaintiff's Second Amended Complaint is verified and signed under penalty of perjury, and therefore,
26   can be used as evidence to consider at the summary judgment stage.  *See Schroeder v. McDonald*, 55
     F.3d 454, 460 & nn. 10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit
27   where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty
     of perjury that contents were true and correct, and allegations were not based purely on his belief but on
28   his personal knowledge).

                                    1

violations against Defendants San Diego County and Sheriff's deputies Scott Torres, Michael Saunders, Harvey Seeley, Kyle Balay, Karl Warren and Kevin Norie.  (ECF No. 55.)  *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under Fed. R. Civ. P. 56.)

Count One alleges violations of Plaintiff's Eighth, Fourteenth, Fourth and Sixth Amendment rights based on an altercation with Defendants wherein Plaintiff sustained an injury above his eye.  Count two alleges violations of Plaintiff's "[a]ccess to courts [and] freedom from cruel and unusual punishment" arising from time spent in disciplinary segregation wherein Plaintiff claims he was denied use of the phone and the shower.  (*Id.* at 4.)  Count Three alleges violations of Plaintiff's "freedom of religion [and] freedom of association," based on a claim that Plaintiff "was denied the rights (sic) to go to religious service."  (*Id.* at 5.)

The Court directed the United States Marshal Service to effect service of the SAC on July 17, 2014.  Defendants filed an answer to Plaintiff's SAC on September 30, 2014.  (ECF No. 70.)  On August 17, 2015, Defendants filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  (ECF No. 78.)

The Court notified Plaintiff of the requirements for opposing summary judgment, pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).  (ECF No. 79.)  Plaintiff filed his opposition on October 5, 2015.  (ECF No. 83.)  Given the brevity of Plaintiff's opposition, the Court required no reply brief.  (ECF No. 84.)

After considering the briefing[3] and for the reasons stated below, the Court

_____

[3] For purposes of summary judgment, Federal Rule of Civil Procedure 56(c)(3) allows a court to consider materials in the record not cited in the briefing.  Here, the Court has considered exhibits attached to Plaintiff's SAC as evidence.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (finding that the court may consider documents or exhibits "whose contents are alleged in a complaint and whose authenticity no party questions."  Moreover, at the summary judgment stage, the Court need not focus

**RECOMMENDS** that Defendants' Motion be **GRANTED** in part and **DENIED** in part.

## II.   FACTUAL BACKGROUND

### A. <u>March 20, 2013—Plaintiff Arrives at San Diego Central Jail</u>

Plaintiff arrived at the San Diego Central Jail ("Central Jail") at 6:00 a.m. on March 20, 2013, after being arrested on charges of being under the influence of a controlled substance.  (Def. Ex. A.)  The medical examiner at the Central Jail determined that Plaintiff could not complete the booking process until he was no longer under the influence of what was believed to be a controlled substance.  (Def. Exs. A and B.)  While in the sobering cell, jail staff frequently monitored Plaintiff and recorded their observations.  (Def. Ex. C.)  Sheriff's Deputy Walch filed an incident report which described Plaintiff as "verbally aggressive," and "pounding on the window."  (Def. Ex. E.)  According to Defendants, Plaintiff resumed the booking process at 3:23 p.m. on March 20, 2013.  (ECF No. 78 at 3:18.)

### B. <u>March 21, 2013—Altercation</u>

#### a. <u>Defendants' Version of the Altercation</u>

On March 21, 2013, a number of deputies transporting new inmates for processing gathered near Plaintiff's holding cell.  (*Id.* at 3:24-4:1.)  Incoming inmates alleged to have committed misdemeanor offenses were identified by a purple wristband, signaling that they could be released after booking.  (*Id.* at 4:4-5.)  As inmates exited the elevator, Defendant Seeley ordered those wearing a purple wristband to line up along the wall across from the elevator doors.  (*Id.* at 4:1-4; *see also* Defendants' Ex. G, Clip No. 2.)  At the same time, the door to Plaintiff's holding cell had been opened so the new inmates could enter.  (ECF No. 78 at 4:6-8.)  Plaintiff exited the holding cell, at which point Defendant Seeley ordered him to go back into his cell.  (*Id.* at 4:8-12; *see also* Def. Ex.

---

on the admissibility of the evidence's form, but instead should focus on the admissibility of its contents. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.").

G, Clip No. 1.)  Plaintiff responded by striking in the direction of Defendant Seeley.  (Def. Ex. G, Clip No. 1; Def. Ex. H at 43:15.)  Defendant Seeley drew his taser, but did not deploy it because Plaintiff had started to retreat back into the cell.  (ECF No. 78 at 4:25-27; Def. Ex. G, Clip No. 1.)

Moments later, Corporal Riley[4] ("Riley") arrived and deployed his taser.  (ECF No. 78 at 5:3-5; *see also* ECF No. 78-3 ¶ 5.)  According to the declaration submitted by Riley, the taser did not make contact with Plaintiff's skin, which allowed Plaintiff to remove the probes from his clothing without being incapacitated.  (ECF No. 78-3 ¶¶ 5-8.)  Riley states that he ordered Plaintiff to stop trying to remove the taser probes, but Plaintiff did not comply.  (*Id.* at ¶¶ 5, 6.)  As a result, Riley activated the taser for a second cycle.  (*Id.* at ¶ 6.)

Plaintiff continued to be combative and resisted efforts to restrain him.  (*Id.* at ¶ 8.)  Plaintiff was "lying on his back in the cell with his feet facing the cell door when Defendant Seeley entered the cell and used both of his hands to grab [Plaintiff]'s feet."  (*Id.*)  Defendant Seeley "lifted [Plaintiff]'s lower body off the floor and attempted to roll him over onto his stomach[,]" but Plaintiff "began to thrash around violently in an attempt to either strike at deputies or get away from their control."  (*Id.*)  According to Riley, Defendant Saunders then "entered the cell to assist Defendant Seeley" and attempted to turn Plaintiff over, when Plaintiff "swung his arm to strike [Defendant] Saunders."  (*Id.* at ¶ 9.)  Defendant Saunders delivered two closed fist strikes with his right hand to the right side of Plaintiff's face, which were ineffective because Plaintiff "continued to struggle, kick and attempt to punch" Defendant Saunders.  (*Id.*)  Defendant Saunders then used his right knee to strike the right side of Plaintiff's upper chest.  (*Id.*)

At that point, Defendant Saunders notified the other deputies that Plaintiff had

---

[4] Corporal Riley is a witness and a participant in the events that transpired, but he is not named as a Defendant in Plaintiff's SAC.  The Court notes that Riley only identifies himself as deploying a taser, which Plaintiff offers no evidence to dispute.  Because Riley is not named as a Defendant, the use of the taser is not included in the Court's analysis regarding the use of excessive force.

started bleeding.  (*Id.*)  Defendant Torres then delivered four knee strikes to the left side of Plaintiff's lower back, at which point Plaintiff rolled onto his stomach.  (*Id.*)  Defendant Saunders "placed his right knee on [Plaintiff]'s upper back to prevent him from attempting to stand up or roll over."  (*Id.*)  Defendant Seeley then placed "leg chains on [Plaintiff]'s ankles," and "Defendant Balay used both of his hands to take cross (sic) [Plaintiff]'s legs" to prevent him from "twisting or being able to kick at deputies."  (*Id.* at ¶ 10.)  Defendant Norie used both of his hands to apply "bodyweight to the back of [Plaintiff]'s legs" and "placed his right knee on the back of [Plaintiff]'s left shoulder to prevent him from rolling over and potentially striking a deputy."  (*Id.* at ¶ 11.)  Defendant Torres used "both of his hands to force [Plaintiff]'s left arm behind his back" while Defendant Saunders did the same with Plaintiff's right arm.  (*Id.*)

Defendant Balay "placed a handcuff on [Plaintiff]'s right wrist" and Defendant Torres "secured the handcuffs to [Plaintiff]'s left wrist."  (*Id.*)  Defendant Warren "applied bodyweight with both of his knees to [Plaintiff]'s lower back area to keep [Plaintiff] from standing and continuing to fight."  (*Id.*)  Because Plaintiff was bleeding, Defendant Norie "placed a spit sock over [Plaintiff]'s head to prevent him from spitting or spraying blood on deputies."  (*Id.*)  Once restrained, Defendants escorted Plaintiff to the jail medical clinic via gurney.  (ECF No. 78-3 ¶ 12.)  Plaintiff sustained a laceration above his right eye.  (*Id.*)

**b. Plaintiff's Version of the Altercation**

Plaintiff's SAC states that he "was on the ground being held down by Corp. Seeley #3663, Deputy Belay (sic) #0040, Deputy Norie #0132, Deputy Torres #5699, and Deputy Warren #7805."  (ECF No. 55 at 3.)  Plaintiff states that he was "being tased repeatedly, and kicked repeatedly."  (*Id.*)  He continues that "[he] was in hand-cuffs when Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye until [Plaintiff] started to pour blood from his face or right eye."  (*Id.*)  Plaintiff also attaches inmate grievances to his SAC, one of which states in pertinent part that he was "hit in [his] eye by one of the staff with his hand and

punched 6-7 times while on the ground handcuffed[.]" (Plaintiff Ex. 2.)  Plaintiff's two additional grievances generally recount his allegations of excessive force.  (*See* Plaintiff Exs. 3 and 7.)

**C. Medical Care Following the March 21, 2013 Altercation**

Medical records from San Diego Sheriff's Department on March 21, 2013, indicate that Plaintiff initially refused consent to repair the laceration, and would not cooperate for the motor examination or assessment of his wound.  (Def. Ex. I at 2.)  Plaintiff eventually received six sutures without complications.  (*Id.* at 2-3.)

Later on March 21, 2013, employee Desilva reported that Plaintiff's sutures remained intact, the dressing was clean and dry, and there was no active bleeding from the wound.  (Def. Ex. J at 4.)  Jail personnel checked and changed Plaintiff's dressing on March 21, 2013 (*Id.* at 5); March 23, 2013 (*Id.* at 6); March 24, 2013 (*Id.* at 7); and March 27, 2013 (*Id.* at 9).  Plaintiff refused consent to change the dressing on his laceration on March 22, 2013 (*Id.* at 5); and March 26, 2013 (*Id.* at 8).  On March 28, 2013, medical staff removed Plaintiff's sutures without complications (*Id.* at 10) and checked him again the following day.  (*Id.* at 11.)

**D. Plaintiff is Charged for his Conduct on March 20, 2013 and March 21, 2013 and Enters Disciplinary Isolation**

On March 22, 2013, Deputy Campbell wrote a jail incident report documenting Plaintiff's March 20, 2013 violations of Inmate Rules and Regulations #101 (Inmate shall treat facility staff in a civil fashion), #103 (Inmates shall not assault any other inmate or staff), #105 (Inmate shall not take part in aggressive or boisterous activity) and #701 (Inmates shall not delay jail operations), which took place while Plaintiff was housed in the sobering cell.  (Def. Ex. N.)  As a result of these charges, Plaintiff entered security lockdown pending a disciplinary hearing.  (Def. Ex. P.)  A hearing conducted pursuant to California Code of Regulations Title 15 Article 7 took place on March 24, 2013.  (Def. Ex. R.)  Plaintiff received eight days disciplinary isolation and was released on April 1, 2013.  (*Id.*)

Plaintiff was also charged for violating California Penal Code § 69 (resisting a peace officer with violence) and § 243 (c)(1) (battery on a peace officer causing minor injury).  (Def. Ex. K; ECF No. 78-3 ¶ 12.)  On April 20, 2013, Plaintiff pled guilty to Penal Code § 69, a felony charge, for violently resisting an executive officer.  (Def. Ex. M.)  The criminal complaint alleged:

> "On or about March 21, 2013, DAVID BRYAN TURNER did unlawfully attempt by means of threats and violence to deter and prevent another who was then and there an executive officer from performing a duty imposed upon such officer by law, and did knowingly resist by use of force and violence said executive officer in the performance of his/her duty, in violation of PENAL CODE SECTION 69."

On April 30, 2013, Plaintiff signed a Plea of Guilty Form under penalty of perjury on admitting the following: "[He] did unlawfully prevent an officer from performing his duty with means of threats and violence."[5]  (*Id.*)  Subsequent to his guilty plea, in his statement to his probation officer regarding the altercation, Plaintiff stated: "I was getting mad.  When they came to the door I was mad.  It wasn't nothing towards them (deputies). I was toying with them like they were toying with me.  It was spur of the moment.  I didn't mean to hit nobody.  I was just mad because I was locked up."  (Def. Ex. L at 3.) On May 29, 2013, Judge Moring sentenced Plaintiff to the upper term of three years in prison.  (Def. Ex. M.)

///

---

[5] Defendants do not argue that any claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Court nonetheless concludes that *Heck* is inapplicable on these facts, as Plaintiff's allegation is that he had ceased resisting and had been restrained in handcuffs *before* the excessive force was employed.  *See Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (Finding that a § 1983 action was not barred, despite the prisoner's guilty plea to resisting arrest "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction); *see also Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) ("[I]f [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction.  *Heck* is no bar.");  *cf. Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under Cal. Penal Code § 148(a) (1) does not "bar a § 1983 claim for excessive force under *Heck* [if] the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.' ").

**E. Plaintiff's Grievances**

Grievance forms are readily available and provided for all inmates to complete and submit, with three successive levels of subsequent review in which facility staff can resolve the grievance.  (ECF No. 78 at 21.)  Each level of review provides the inmate with a written response and a resolution or reasons for its denial.  (ECF No. 78-4 ¶¶ 1-5; Def. Ex. T.)

The first level of review is conducted by a first level supervisor.  (ECF No. 78 at 21.)  If an inmate is not satisfied with the proposed resolution of his grievance at the first level, he can appeal to an intermediate level of review conducted by a sworn supervising officer designated as the jail facility's grievance review officer.  (*Id.*)  If an inmate is dissatisfied with the proposed resolution at that level of review, he can appeal the decision to the third and final level of review conducted by the Facility Commander.  (ECF No. 78-4 ¶¶ 4-7; Def. Ex. T.)

Plaintiff attached eight inmate grievances to his SAC, each of which will be discussed in the context of the causes of action to which they relate.

**a.  Count One: Cruel and Unusual Punishment (Excessive Force)**

Plaintiff filed three inmate grievances recounting the altercation that took place on March 21, 2013 and alleging the use of unreasonable force.  (Plaintiff Exs. 2, 3, 7.)  A grievance filed on March 30, 2013, states that Plaintiff "was hit in [his] eye by one of the staff with his hand and punched 6 or 7 times while on the ground handcuffed[.]"  A second grievance filed on April 16, 2013, requests an "Internal Affairs form" and "further investigation" regarding an "injury to [his] right eye."  (Plaintiff Ex. 7.)  Plaintiff filed his third grievance relating to Count One on May 1, 2014, stating that he sustained "injuries to his eye, back, neck" as well as "mental distress" as a result of "unreasonable force."  (Plaintiff Ex. 3.)

An undated lodgment appears to be a response to one of the three grievances, and explains that the "force used during your altercation was deemed necessary for the circumstances to gain control over you and to protect [the staff] from your violent

assault." (Plaintiff Ex. 1.)  Plaintiff also submits a "Notice of Rejection of Claim" from San Diego Office of County Counsel dated February 5, 2014.  (Plaintiff Ex. 10.)  Plaintiff did not provide an explanation of this lodgment.  According to the notice, it relates to an incident that took place on December 3, 2013.  (Plaintiff Ex. 10.)  The incident at issue in this case took place on March 21, 2013, and the Court is not aware of any incidents at issue in this matter that took place on December 3, 2013, thus the relevance of this lodgment is unclear.

At the end of April, Plaintiff filed two inmate grievances describing continued back pain and headaches and requesting a CAT-scan.  (Plaintiff Exs. 8, 9.)  According to San Diego Sheriff's Department Medical Chart, an employee referred Plaintiff to "MDSC" for back pain (Def. Ex. S at 1.), where he saw Steve Aguilar on May 2, 2013. (*Id.* at 2-4.)

### b.  Count Two: Cruel and Unusual Punishment (Access to Courts)

As a result of Plaintiff's March 24, 2013 disciplinary hearing, Plaintiff received eight days isolation and was released on April 1, 2013.  (Def. Ex. R.)  Plaintiff's Count Two states that this period of isolation impacted his "access to the courts and to [his] lawyers."  (ECF No. 55 at 4.)  Plaintiff states in an inmate grievance that, during this disciplinary isolation, he could not leave his cell for a period of twenty-four hours between March 30, 2013 and April 2, 2013, and he was not permitted to shower for "2 or 3" days.  (Plaintiff Ex. 6.)  On April 1, 2013, Plaintiff filed an Inmate Grievance stating that he had not been given time to call his attorney regarding an upcoming trial.  (Plaintiff Ex. 5.)

### c.  Count Three: Freedom of Religion

On April 7, 2013, Plaintiff filed an Inmate Grievance stating that he was "denied the right for (sic) religious services."  (Plaintiff Ex. 4.)  His SAC explains that he needed to attend services to help him feel better after the altercation with the officers.  (ECF No. 55 at 5.)

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Standard Of Review

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

### B. Plaintiff's First Cause of Action: Use of Excessive Force

#### 1.  Parties' Arguments

Defendants argue that their use of force against Plaintiff was reasonable and justified based on Plaintiff's assaultive behavior. (ECF No. 78 at 17:26-18:4.) Plaintiff admitted in his deposition that he threw punches at the air (Def. Ex. H at 43:15) and tried

to remove the taser darts from his clothing.  (*Id.* at 44:13-20.)  The video lodged with the Court shows the deputies pushing Plaintiff back into the cell and attempting to close the cell door, but Plaintiff blocked the door from closing and struck in the direction of the deputies.  (Def. Ex. G, Clip No. 1.)  The Court notes that the video footage is only helpful in confirming Plaintiff's initial combative behavior.  The camera angle does not reveal anything that took place inside Plaintiff's cell, where the majority of the altercation took place.

Although Plaintiff makes general allegations that Defendants Seeley, Balay, Torres, Warren and Norie used excessive force, Plaintiff presents no evidence that disputes Defendants' version of the force they used *prior* to Plaintiff being handcuffed. Plaintiff's version of events differs from Defendants' only as to his claim that he had already been successfully handcuffed "when Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye, until [Plaintiff] started to pour blood from his face or right eye."  (ECF No. 55 at 3; *see also* Plaintiff Ex. 2 ("I was hit in my eye by one of the staff with his hand and punched 6-7 times while on the ground handcuffed[.]"))

## 2.  Standard

The Eighth Amendment's prohibition against the malicious or sadistic use of force, *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992), does not apply "until after conviction and sentence."  *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989).  Pretrial detainees, which was Plaintiff's status at the time of the altercation, are instead protected by substantive due process, and may also challenge the use of force against them under the Fourteenth Amendment if that force is so excessive that it amounts to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *see also Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) ("The more protective fourteenth amendment standards apply to conditions of confinement when detainees . . . have not [yet] been convicted of a crime.") (citation omitted).  Thus, pretrial detainees, "retain at

least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell*, 441 U.S. at 545; *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991) (en banc).

A pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).) Because this balancing "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). But, where there is no need for force, any force used is objectively unreasonable for constitutional purposes. *See P.B. v. Koch*, 96 F.3d 1298, 1303–04 & n. 4 (9th Cir. 1996).

### 3.  Discussion as to Defendants Seeley, Balay, Torres, Warren and Norie

#### a.  The Relationship Between the Force Needed and the Force Used

One factor the Court considers in analyzing an excessive force claim is the relationship between the force needed under the circumstances and the force used. Plaintiff has conceded, by pleading guilty to Cal. Penal Code § 69, that he "knowingly resist[ed] by use of force and violence." (Def. Ex. M.)  In response to Plaintiff's

combative behavior, Riley's declaration states that Defendant Seeley "used both of his hands to grab [Plaintiff]'s feet" (ECF No. 78-3 ¶ 8) and "placed leg chains on [Plaintiff]'s ankles." (*Id.* at ¶ 10.)  Defendant Balay "used both of his hands to take cross (sic) [Plaintiff]'s legs and applied downward pressure to prevent him from twisting or being able to kick at deputies." (*Id.*)  Defendant Norie "used both of his hands and applied bodyweight to the back of [Plaintiff]'s legs," and "placed his right knee on the back of [Plaintiff]'s left shoulder to prevent him from rolling over and potentially striking a deputy." (*Id.* at ¶ 11.)  Defendant Torres "delivered four knee strikes to the left side of [Plaintiff's] lower back." (ECF No. 78-3 ¶ 9.)

Defendants Seeley, Balay, Torres, Warren and Norie argue that they used only the force necessary to protect themselves from injury and maintain institutional security, using Riley's declaration, video footage, and court documents regarding Plaintiff's guilty plea to Cal. Penal Code § 69 as supporting evidence.  (ECF No. 78 at 20:7-8.)  Plaintiff offers no evidence that these Defendants used force outside of their efforts to restrain him from conduct he admits was violent.  To avoid summary judgment, Plaintiff must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 256 (1986).  Instead, Plaintiff admits that he used force initially, and only refers to Defendants Seeley, Balay, Torres, Warren and Norie as "[holding him] down." (ECF No. 55 at 3.)  Even though Plaintiff generally asserts that all Defendants used excessive force, he cannot rest solely on conclusory allegations.  *Berg*, 794 F.2d at 459.  Because Plaintiff does not submit any evidence showing a genuine issue of fact, this factor weighs in favor of finding that Defendants Seeley, Balay, Torres, Warren and Norie used an appropriate amount of force under the circumstances.

### b.  Extent of Injury

Another factor the Court considers is the extent of the injury suffered by Plaintiff. It is uncontested that Plaintiff received six stitches above his right eyebrow to close the laceration incurred during the incident with Defendants.  (*See* ECF No. 78 at 7:11-13, Def. Ex. I.)  The uncontested medical evidence supports a finding that Plaintiff's

laceration was more than *de minimus* and factors against Defendants' argument that they applied force in good faith. Although Plaintiff's injury was more than *de minimus*, it is undisputed that the force leading to stitches was due to the force employed by Defendant Saunders, as discussed below. Plaintiff has not submitted any evidence that he sustained any other injuries as a result of being held down by Defendants Seeley, Balay, Torres, Warren or Norie. Therefore, the extent-of-the-injury factor weighs in favor of Defendants Seeley, Balay, Warren, Torres, and Norie.

### c. Efforts to Temper the Amount of Force

The Court also considers any efforts by Defendants to temper the force used against Plaintiff. Here, Defendants submit evidence that they incrementally increased the level of force used to restrain Plaintiff. When Plaintiff initially exited the holding cell, Defendant Seeley ordered him to go back into his cell. (ECF No. 78 at 4:8-12; *see also* Def. Ex. G, Clip No. 1.) Plaintiff responded by striking in the direction of Defendant Seeley. (Def. Ex. G, Clip No. 1; Def. Ex. H at 43:15.) Defendant Seeley drew his taser, but did not deploy it because Plaintiff had started to retreat back into the cell. (ECF No. 78 at 4:25-27; Def. Ex. G, Clip No. 1.) Defendant Seeley then placed "leg chains on [Plaintiff]'s ankles," and "Defendant Balay used both of his hands to take cross (sic) [Plaintiff]'s legs" to prevent him from "twisting or being able to kick at deputies." (*Id.* at ¶ 10.) Defendant Norie used both of his hands to apply "bodyweight to the back of [Plaintiff]'s legs" and "placed his right knee on the back of [Plaintiff]'s left shoulder to prevent him from rolling over and potentially striking a deputy." (*Id.* at ¶ 11.)

Given that Plaintiff has conceded to violently resisting the officers, the evidence supports the conclusion that Defendants Seeley, Balay, Torres, Warren and Norie only used the force necessary to gain control over Plaintiff and handcuff him. Again, even though Plaintiff generally asserts that all Defendants used excessive force, he cannot rest solely on conclusory allegations, *Berg*, 794 F.2d at 459, without providing some evidence to create a genuine issue of material fact. *Anderson*, 477 U.S. at 256. Plaintiff offers no such evidence regarding the actions of Defendants Seeley, Balay, Torres, Warren or

13cv01133-WQH-BGS

Norie.  This further supports a finding that Defendants Seeley, Balay, Warren, Torres, and Norie made an effort to temper the amount of force used in response to Plaintiff's resistance.

### d.  The Threat Reasonably Perceived by Defendants

The Court also looks at the threat perceived by the responsible officials. Defendants argue that it was reasonable for them to perceive Plaintiff's actions as threating because (1) Plaintiff initiated the confrontation with Defendants by challenging institutional rules when he refused verbal instructions to return to the holding cell, (2) Plaintiff's actions created the potential to incite other unrestrained inmates to disorder, (3) and Plaintiff attacked Defendants Seeley, Warren, and Deputy Lotko[6].  (ECF No. 78 at 19:27-20:2.)  Defendants further claim that Plaintiff fought with the deputies, and resisted their efforts to handcuff him despite being ordered to stop.  (ECF No. 78 at 20:2-5.)  Plaintiff's uncooperative behavior is corroborated by his deposition testimony where he admits to punching at the air (Def. Ex. H at 43:15) as well as the video footage that shows Plaintiff refusing to re-enter his cell at the request of the deputies.  (Def. Ex. G, Clip No. 1.)  Plaintiff also admitted to the use of "force and violence" in resisting Defendants.  (Def. Ex. M.)  This evidence supports a conclusion that the Defendants' efforts to restrain Plaintiff were made in a good faith effort to restore discipline.

Because all of the factors support Defendants' argument that Defendants Seeley, Balay, Torres, Warren and Norie's use of force was objectively reasonable under the circumstances, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's First Cause of Action for cruel and unusual punishment against Defendants Seeley, Balay, Torres, Warren and Norie be **GRANTED**.

///

///

---

[6] Deputy Lotko is identified by Defendants in their Motion for Summary Judgment as being present during the altercation, but he is not named as a Defendant, nor mentioned at all, in Plaintiff's SAC.

### 4.  Discussion as to Defendant Saunders

#### a.  The Relationship between the Force Needed and the Force Used

One factor the Court considers in analyzing a claim of excessive force is the relationship between the force needed under the circumstances and the force used. Plaintiff has conceded, by pleading guilty to Cal. Penal Code § 69, that he "knowingly resist[ed] by use of force and violence." (Def. Ex. M.)  In response to Plaintiff's combative behavior, Riley's declaration states that Defendant Saunders "deliver[ed] two closed first (sic) strikes with his right hand to the right side of [Plaintiff]'s face[, but] the strikes were not effective." (ECF No. 78-3 ¶ 9.)  Because Plaintiff continued to "struggle, kick and attempt to punch[,]" Saunders delivered a knee strike to Plaintiff's upper chest.  (*Id.*)

Plaintiff's SAC states that he "was in handcuffs when Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye, until [Plaintiff] started to pour blood from his face or right eye." (ECF No. 55 at 3.) Plaintiff states again in an inmate grievance that he was already in handcuffs when "one of the staff" punched him in the head.[7]  (Plaintiff Ex. 2.)  According to Riley's declaration, however, Defendants only handcuffed Plaintiff *after* the strikes from Defendant Saunders subdued him.  (ECF No. 78-3 ¶ 9.)

Based on the contradictory testimony, the Court finds that genuine issues of material fact exist as to whether Defendant Saunders' use of force under the circumstances was justified, or instead, was so excessive that it amounted to punishment. *Bell*, 441 U.S. at 535; *Jones*, 393 F.3d at 934.  A rational trier of fact could believe either that Defendant Saunders's actions were "punitive," i.e., that they were excessive in relation to a legitimate need to ensure jail security, *id.*, or that they constituted a reasonable and appropriate response to the threat Plaintiff posed.  *Id.*; *see also Anderson*,

---

[7] Riley's declaration identifies Defendant Saunders as the *only* Defendant to strike Plaintiff in the head. (*See* ECF No. 78-3 ¶ 9.)

477 U.S. at 255 (at summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). *See also Scott v. Palmer, 2012 WL 396587 (E.D. Cal. Feb. 7, 2012)*, report and recommendation adopted, 2012 WL 930862 (E.D. Cal. March 19, 2012) (report and recommendation) (evidence sufficient to withstand summary judgment on inmate's excessive force claim alleging that after he was subdued and handcuffed, defendant "kicked him four times in the ribs on his left side and stomped his back and shoulder three times.")

### b.  Extent of Injury

Another factor the Court considers is the extent of the injury suffered by Plaintiff. It is uncontested that Plaintiff received six stitches above his right eyebrow to close the laceration incurred during the incident with Defendants.  (*See* ECF No. 78 at 7:11-13, Def. Ex. I.)  The uncontested medical evidence supports a finding that Plaintiff's laceration was more than *de minimus* and factors against Defendant Saunders' argument that he applied force in good faith.

### c.  Efforts to Temper the Amount of Force

The Court also considers any efforts by Defendant to temper the force used against Plaintiff.  Defendant Saunders, like the other Defendants, argues that he incrementally increased the level of forced used to restrain Plaintiff.  According to Riley's declaration, Defendant Saunders "deliver[ed] two closed first (sic) strikes with his right hand to the right side of [Plaintiff]'s face[, but] the strikes were not effective."  (ECF No. 78-3 ¶ 9.) Because Plaintiff continued to "struggle, kick and attempt to punch[,]" Saunders delivered a knee strike to Plaintiff's upper chest.  (*Id.*)

Plaintiff's testimony, as discussed above, states that Plaintiff was already handcuffed when Defendant Saunders hit him in the head.  (ECF No. 55 at 3.)  Taking the evidence in the light most favorable to the nonmoving party negates any conclusion that Defendant Saunders tempered the amount of force used against Plaintiff.  *Anderson*, 477 U.S. at 255.  Indeed, Plaintiff's version of events describes an escalation of force by

1  Defendant Saunders.  Based on the contradictory testimony, the Court finds that genuine

2  issues of material fact exist as to the effort made by Defendant Saunders to temper the

3  amount of force employed against Plaintiff.

4            d.  **The Threat Reasonably Perceived by Defendant**

5         The Court also looks at the threat perceived by the responsible officials.

6  Defendant Saunders, like the other Defendants, argues that it was reasonable for him to

7  perceive Plaintiff's actions as threating because (1) Plaintiff initiated the confrontation

8  with Defendants by challenging institutional rules when he refused verbal instructions to

9  return to the holding cell, (2) Plaintiff's actions created the potential to incite other

10 unrestrained inmates to disorder, (3) and Plaintiff attacked Defendants Seeley, Warren,

11 and Deputy Lotko[8].  (ECF No. 78 at 19:27-20:2.)  Defendant Saunders further claims that

12 Plaintiff fought with the deputies, and resisted their efforts to handcuff him despite being

13 ordered to stop.  (ECF No. 78 at 20:2-5.)  Plaintiff's uncooperative behavior is

14 corroborated by his deposition testimony where he admits to punching at the air (Def. Ex.

15 H at 43:15) as well as the video footage that shows Plaintiff refusing to re-enter his cell at

16 the request of the deputies.  (Def. Ex. G, Clip No. 1.)  Plaintiff also admitted to the use of

17 "force and violence" in resisting Defendants in his guilty plea to Cal. Penal Code § 69.

18 (Def. Ex. M.)

19        Plaintiff's description of the altercation, however, is that Plaintiff had *already been*

20 *restrained* "in handcuffs" when Defendant Saunders "walked in the holding cell, and

21 began punching and kicking [Plaintiff] in his head or right eye."  (ECF No. 55 at 3.)  At

22 the summary judgment stage, the court must view the evidence in the light most

23 favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Based on the

24 contradictory testimony, the Court finds that genuine issues of material fact exist as to the

25 threat reasonably perceived by Defendant Saunders when he employed force against

26

27 _____

28 [8] Deputy Lotko is identified by Defendants in their Motion for Summary Judgment as being present
during the altercation, but he is not named as a Defendant, nor mentioned at all, in Plaintiff's SAC.

1  Plaintiff.

2      Accordingly, because conflicting factual accounts of the altercation, in particular

3  whether the amount of force Defendant Saunders used was commensurate with the force

4  required under the circumstances, reveal genuine issues of material fact, **IT IS**

5  **RECOMMENDED** that the Court **DENY** Defendants' Motion for Summary Judgment

6  as to Plaintiff's excessive force claim against Defendant Saunders.

7      **C. Qualified Immunity Regarding Claim of Excessive Force**

8      Because the Court has recommended that summary judgment be granted on

9  Plaintiff's first count as to Defendants Seeley, Balay, Torres, Warren and Norie, qualified

10  immunity is analyzed only as to Defendant Saunders.

11      **1. Parties' Arguments**

12      Defendant Saunders argues that he is entitled to qualified immunity because he did

13  not use excessive force towards Plaintiff.  In the alternative, Defendant Saunders argues

14  that even if the Court finds Plaintiff's constitutional rights were violated, he is still

15  entitled to qualified immunity because a reasonable person in his position would have

16  believed his conduct lawful.  (ECF No. 78 at 18:19-19:23.)

17      **2. Standard**

18      Qualified immunity is not merely a defense to liability, but rather a bar to suit, to

19  avoid the "burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151,

20  150 L.Ed.2d 272 (2001).  Courts make this determination by asking whether the officer's

21  conduct violated a constitutional right.  *See id.*  If no constitutional right is violated, there

22  is "no necessity for further inquiries concerning qualified immunity."  *Id.*  If a right is

23  violated, the court inquires whether that right was clearly established at the time of the

24  incident.  *See id.*  A constitutional right is clearly established when "it would be clear to a

25  reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*

26  Lower courts may exercise their sound discretion in deciding the order in which to

27  address *Saucier's* two prongs "in light of circumstances in the particular case at hand."

28  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

As stated above, the Court recommends a finding that genuine issues of material fact exist regarding whether the force used against Plaintiff while he was purportedly restrained was unreasonable and therefore excessive under the circumstances.  The Court also recommends a finding that Defendant Saunders' request for qualified immunity be denied, because the contours of the right against excessive force in this context were clearly established at the time of the altercation.  For example, the Supreme Court in *Hudson* held unconstitutional an unjustified use of physical force upon a non-resistant prisoner.  *See Hudson*, 503 U.S. at 7-10 (holding that guards violated Hudson's Eighth Amendment rights when they gratuitously punched and hit him, causing only minor injuries, while escorting him between prison facilities).

The Ninth Circuit has similarly found, in the case of a pre-trial detainee alleging excessive force, that "by 1985, the law of this Circuit would have put a reasonable officer on notice that an 'unprovoked and unjustified attack" violates clearly established constitutional rights.  *Lolli*, 351 F.3d at 421-22 (citing *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991)).  In *Lolli*, the Ninth Circuit found genuine issues of fact as to the amount of force used against a pretrial detainee who claimed to have been "handcuffed before the beating stopped and . . . kicked, hit or twisted about 10 times after he was cuffed," which precluded the district court's finding of qualified immunity.  *Id.* at 412, 415, 421-22.

Here, there are triable questions of fact as to when Plaintiff was restrained and when exactly he was injured.  If those facts are taken in the light most favorable to Plaintiff, the law is clearly established such that a reasonable officer should have known that employing force on a compliant, handcuffed pretrial detainee is a violation of constitutional rights.  Thus, the Court **RECOMMENDS** that Defendants motion for summary judgment based on qualified immunity as to Defendant Saunders be **DENIED**.

///

///

///

### D. Exhaustion of Available Administrative Remedies Regarding Plaintiff's Count Two (Cruel and Unusual Punishment) and Count Three (Freedom of Religion)

Plaintiff filed eight inmate grievances involving the issues described in his complaint, and attached those grievances to his SAC.  (*See* Plaintiff Exs. 2-6, 8, 9)  Count Two in Plaintiff's SAC alleges violations of Plaintiff's "[a]ccess to courts [and] freedom from cruel and unusual punishment" arising from time spent in disciplinary segregation wherein Plaintiff claims he was denied use of the phone and the shower. (ECF No. 55 at 4.)  On April 1, 2013, Plaintiff filed an inmate grievance stating that he had not been given time to call his attorney about an upcoming trial.  (Plaintiff Ex. 5.)  In an inmate grievance filed on April 2, 2013, Plaintiff states that, during this disciplinary isolation, he could not leave his cell for a period of twenty-four hours between March 30, 2013 and April 2, 2013, and he was not permitted to shower for "2 or 3" days.  (Plaintiff Ex. 6.)

Count Three alleges violations of Plaintiff's "freedom of religion [and] freedom of association," based on a claim that Plaintiff "was denied the rights to go to religious service."  (ECF No. 55 at 5.)  On April 7, 2013, Plaintiff filed an Inmate Grievance that he was "denied the right for (sic) religious services."  (Plaintiff Ex. 4.)

Defendants move for summary judgment as to Counts Two and Three on the grounds that Plaintiff failed to exhaust his available administrative remedies prior to bringing this suit as required by 42 U.S.C. § 1997e.  It is well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant jail officials have the burden of raising and proving. *See Jones v. Bock*, 594 U.S. 199, 216 (2007); *Albino v. Baca*, 747 F.3d 1162, 1168-69 (2014).

### 1.  Standard

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section

1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525, and to encompass inmate suits about both general circumstances and particular episodes of prison life—including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies before he filed suit, even if he fully exhausts while the suit is pending).

The County of San Diego Sheriff's Department Detention Services provides inmates the right to administratively appeal any issue related to "any condition of confinement." (*See* Def. Ex. T, Policy and Procedure, § N.1, grievance procedure.) In order to exhaust available administrative remedies within this system, an inmate must proceed through the following levels: (1) informal resolution, (2) formal written appeal on J-22 Inmate Grievance forms or other writing materials, (3) second level appeal to Grievance Review officer, and (4) third level of appeal to Facility Commander. *Id.*

### 2. Parties' Arguments

Defendants argue that Plaintiff failed to exhaust his available administrative remedies as to Counts Two and Three, by only filing grievances at the first level. As support, Defendants submit a declaration from County Sheriff's Sgt. Dorothy Patterson which describes the administrative grievance procedure in the San Diego County jails by which all inmate grievances are addressed. (ECF No. 78 at 21.) According to that declaration, grievance forms are readily available and provided for all inmates to

complete and submit, with three successive levels of subsequent review in which facility staff can resolve the grievance.  (*Id.*)  Each level of review provides the inmate with a written response and a resolution or reasons for its denial.  (ECF No. 78-4 ¶¶ 1-5; Def. Ex. T.)

The first level of review is conducted by a first level supervisor.  (ECF No. 78 at 21.)  If an inmate is not satisfied with the proposed resolution of his grievance at the first level he can appeal to an intermediate level of review conducted by a sworn supervising officer designated as the jail facility's grievance review officer.  (*Id.*)  If an inmate is dissatisfied with the proposed resolution at that level of review, he can appeal this to the third and final level of review conducted by the Facility Commander.  (ECF No. 78-4 ¶¶ 4-7; Def. Ex. T.)

### 3. Discussion

Defendants contend Plaintiff failed to properly exhaust his administrative remedies as to his second and third claims prior to bringing this suit, having failed to appeal the related inmate grievances.  (*See* ECF No. 78-4 ¶¶ 10-11.)  Defendants have met their burden to show that there is no evidence in the record that Plaintiff exhausted the administrative remedies as to Counts Two and Three.  However, it is also Defendants burden to prove that "there was an available remedy."  *Williams v. Paramo*, __ F.3d __, 2015 WL 74144 at * 7 (9th Cir. 2015).  County Sheriff's Sgt. Dorothy Patterson's declaration describing the administrative grievance procedure in San Diego County jails sufficiently demonstrates that there was an available remedy, and Plaintiff had opportunity to know of that remedy.  (*See* ECF No. 78-4.)  Once the defendant meets that burden, the plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  Plaintiff offers no rebuttal to this showing by Defendants.  The Court also notes that Plaintiff was able to successfully navigate the administrate remedy procedures as to Count One, supporting a finding that he knew of the additional levels of review, yet failed to utilize them as to

23

Counts Two and Three.  (ECF No. 78 at 21.)

Plaintiff has failed to rebut Defendants' showing that he did not properly exhaust his administrative remedies regarding his second and third claims prior to bringing this action.  Thus, the Court **RECOMMENDS** that Defendants motion for summary judgment based on failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) be **GRANTED** as to Plaintiff's second and third claims.

### E. Viability of Civil Rights Claims Against Defendant San Diego County

#### 1.  Parties' Arguments

Defendants argue that Plaintiff's allegations of constitutional violations involve only the individual deputies, and do not mention any involvement by the County or cite any purported policy of the County.  (ECF No. 78 at 12:6-14.)  As to Count One, Plaintiff identifies "Corp. Seeley [], Deputy Balay [], Deputy Norie [], Deputy Torres [], Deputy Warren []" and "Corp. Saunders []" as using "excessive force."  (ECF No. 55 at 3.)  For Count Two, Plaintiff states that the "County of San Diego employee's (sic) actions and omissions amounted to deliberate indifference to serious medical needs at Central Jail in the scope of their employment."  (*Id.* at 4.)  For Count Three, Plaintiff states that he "was denied the rights (sic) to go to religious service, by employee's (sic) at San Diego County, Central Jail in the scope of there (sic) employment."  (*Id.* at 5.)  Neither Plaintiff's SAC nor his opposition to Defendants' Motion for Summary Judgment identify a policy or practice within San Diego County responsible for the conduct giving rise to his claims.

#### 2.  Standard

A plaintiff seeking to impose liability on a county under § 1983 must identify a municipal "policy" or "custom" that caused his injury.  *Bryan County Commis v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing *Monell*, 436 U.S. at 694).  Specifically, the plaintiff must allege: (1) the plaintiff "possessed a constitutional right of which he was deprived;" (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy

24

1  was the "moving force" behind or cause of the constitutional violation.  *Dietrich v. John*
2  *Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort*, 92 F.3d at 835).

3      Even if there is not an explicit policy, a plaintiff may establish municipal liability
4  upon a showing that there is a permanent and well-settled practice by the municipality
5  which gave rise to the alleged constitutional violation.  *See City of St. Louis v.*
6  *Praprotnik*, 485 U.S. 112, 127 (1988); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225,
7  1232-33 (9th Cir. 2011).  Allegations of random acts, or single instances of misconduct,
8  however, are insufficient to establish a municipal custom.  *See Navarro v. Block*, 72 F.3d
9  712, 714.

10      **3.  Discussion**

11      In this case, the Court recommended a finding that triable issues of fact exist only
12  as to Plaintiff's excessive force claim against Defendant Saunders.  No evidence in the
13  record–nor even any allegation in Plaintiff's SAC– suggest Defendant Saunders' actions
14  were "caused by" any custom, policy or practice of the County of San Diego.  *See*
15  *Monell*, 436 U.S. at 694; *Brown*, 520 U.S. at 405 (noting that "[w]here a plaintiff claims
16  that the municipality has not directly inflicted injury, but nonetheless has caused an
17  employee to do so, rigorous standards of culpability and causation must be applied to
18  ensure that the municipality is not held liable for the actions of its employee.").

19      Here, Plaintiff specifically premises the gravamen of this action on the acts of an
20  individual Sheriff Deputy's application of force against him on a particular occasion.  For
21  example, Plaintiff states that while he was handcuffed, "Corp. Saunders #7294 walked in
22  the holding cell, and began punching and kicking [Plaintiff] in his head or right eye, until
23  [Plaintiff] started to pour blood from his face or right eye."  (ECF No. 55 at 3.)  However,
24  a plaintiff cannot demonstrate the existence of a municipal policy or custom based solely
25  on a "single occurrence of [allegedly] unconstitutional action by a non-policymaking
26  employee."  *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000).  Because Plaintiff has
27  not put forth any evidence that Defendant Saunders' alleged actions were the result of a
28  custom or policy in San Diego County, **IT IS RECOMMENDED** that summary

judgment as to all claims against San Diego County be **GRANTED**.

## IV.  CONCLUSION

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. section 636(b)(1).  For the reasons set forth above, it is **RECOMMENDED** that:

1)  Defendants' Motion for Summary Judgment regarding Plaintiff's First Claim of excessive force as to Defendants Seeley, Balay, Torres, Warren and Norie be **GRANTED**.

2)  Defendants' Motion for Summary Judgment regarding Plaintiff's First Claim of excessive force as to Defendant Saunders be **DENIED**.

3)  Defendants' Motion for Summary Judgment regarding qualified immunity for Plaintiff's First Claim of excessive force as to Defendant Saunders be **DENIED**.

4)  Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies regarding Plaintiff's Second and Third Claims be **GRANTED**.

5)  Defendants' Motion for Summary Judgment regarding all claims against San Diego County be **GRANTED**.

**IT IS ORDERED** that no later than **December 9, 2015** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 30, 2015**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  November 18, 2015

Hon. Bernard G. Skomal
United States Magistrate Judge