1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12   DAVID B. TURNER,                          CASE NO. 13cv1133-WQH-BGS
13                              Plaintiff,     ORDER
14        vs.
15   COUNTY OF SAN DIEGO
16                              Defendants.

17   HAYES, Judge:

18           The matters before the Court is the Report and Recommendation by the United

19   States Magistrate Judge Bernanard G. Skomal (ECF No. 93), recommending that

20   Defendants' Motion for Summary Judgment be granted in part and denied in part (ECF

21   No. 78).

22   **I. Background**

23           On June 13, 2014, Plaintiff, a former prisoner proceeding pro se, filed a Second

24   Amended Complaint alleging three counts of constitutional violations.  (ECF No. 55).

25   In Count One, Plaintiff alleges violations of Plaintiff's Eighth, Fourteenth, Fourth, and

26   Sixth Amendment rights based on an altercation with Defendant wherein Plaintiff

27   sustained an injury above his eye.   In Count Two, Plaintiff alleges violations of

28   Plaintiff's "[a]cess to courts [and] freedom from cruel and unusual punishment" arising

     from time spent in disciplinary segregation wherein Plaintiff claims he was denied use

of the phone and the shower. *Id.* at 4. In Count Three, Plaintiff alleges that Plaintiff's "freedom of religion [and] freedom of association" were violated because he was "denied the rights [sic] to go to religious service." *Id.* at 5.

On September 30, 2014, Defendants filed an answer to Plaintiff's Second Amended Complaint. (ECF No. 70). On August 17, 2015, Defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 78). On October 5, 2015, Plaintiff filed his opposition. (ECF No. 83). Given the brevity of Plaintiff's opposition, the Court required no reply brief. (ECF No. 84).

On November 18, 2015, the Magistrate Judge issued the Report and Recommendation, recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part. (ECF No. 93). The docket reflects that no objections have been filed to the Report and Recommendation.

**II. Factual Background**

**A. March 20, 2013—Plaintiff Arrives at San Diego Central Jail**

Plaintiff arrived at the San Diego Central Jail ("Central Jail") at 6:00 a.m. on March 20, 2013, after being arrested on charges of being under the influence of a controlled substance. (Def. Ex. A). The medical examiner at the Central Jail determined that Plaintiff could not complete the booking process until he was no longer under the influence of what was believed to be a controlled substance. (Def. Exs. A and B). While in the sobering cell, jail staff frequently monitored Plaintiff and recorded their observations. (Def. Ex. C). Sheriff's Deputy Walch filed an incident report which described Plaintiff as "verbally aggressive," and "pounding on the window." (Def. Ex. E). According to Defendants, Plaintiff resumed the booking process at 3:26 p.m. on March 20, 2013. (ECF No. 78-1 at 3).

**B. March 21, 2013—Altercation**

**a. Defendants' Version of the Altercation**

On March 21, 2013, a number of deputies transporting new inmates for processing gathered near Plaintiff's holding cell. *Id.* Incoming inmates alleged to have

committed misdemeanor offenses were identified by a purple wristband, signaling that they could be released after booking.  *Id.* at 4.  As inmates exited the elevator, Defendant Seeley ordered those wearing a purple wristband to line up along the wall across from the elevator doors.  *Id.* at 4; *see also* Def. Ex. G, Clip No. 2.  At the same time, the door to Plaintiff's holding cell had been opened so the new inmates could enter.  (ECF No. 78 at 4).  Plaintiff exited the holding cell, at which point Defendant Seeley ordered him to go back into his cell.  *Id.* at 4; *see also* Def. Ex. G, Clip No. 1. Plaintiff responded by striking in the direction of Defendant Seeley.  Def. Ex. G, Clip No. 1; Def. Ex. H at 43.  Defendant Seeley drew his taser, but did not deploy it because Plaintiff had started to retreat back into the cell. (ECF No. 78-1 at 4); Def. Ex. G, Clip No. 1.

Moments later, Corporal Riley ("Riley") arrived and deployed his taser.  (ECF No. 78-3 at ¶ 5).  According to Riley's declaration, the taser did not make contact with Plaintiff's skin, which allowed Plaintiff to remove the probes from his clothing without being incapacitated.  *Id.* at ¶¶ 5-8.  Riley states that he ordered Plaintiff to stop trying to remove the taser probes, but Plaintiff did not comply.  *Id.* at ¶¶ 5, 6.  As a result, Riley activated the taser for a second cycle.  *Id.* at ¶ 6.

Plaintiff continued to be combative and resisted efforts to restrain him.  *Id.* at ¶ 8.  Plaintiff was "lying on his back in the cell with his feet facing the cell door when Defendant Seeley entered the cell and used both of his hands to grab [Plaintiff]'s feet." *Id.*  Defendant Seeley "lifted [Plaintiff]'s lower body off the floor and attempted to roll him over onto his stomach[,]" but Plaintiff "began to thrash around violently in an attempt to either strike at deputies or get away from their control."  *Id.*  According to Riley, Defendant Saunders then "entered the cell to assist Defendant Seeley" and attempted to turn Plaintiff over, when Plaintiff "swung his arm to strike [Defendant] Saunders."  *Id.* at ¶ 9.  Defendant Saunders delivered two closed fist strikes with his right hand to the right side of Plaintiff's face, which were ineffective because Plaintiff "continued to struggle, kick and attempt to punch" Defendant Saunders.  *Id.*  Defendant

Saunders then used his right knee to strike the right side of Plaintiff's upper chest. *Id.*

At that point, Defendant Saunders notified the other deputies that Plaintiff had started bleeding. *Id.* Defendant Torres then delivered four knee strikes to the left side of Plaintiff's lower back, at which point Plaintiff rolled onto his stomach. *Id.* Defendant Saunders "placed his right knee on [Plaintiff]'s upper back to prevent him from attempting to stand up or roll over." *Id.* Defendant Seeley then placed "leg chains on [Plaintiff]'s ankles," and "Defendant Balay used both of his hands to take cross [sic] [Plaintiff]'s legs" to prevent him from "twisting or being able to kick at deputies." *Id.* at ¶ 10. Defendant Norie used both of his hands to apply "bodyweight to the back of [Plaintiff]'s legs" and "placed his right knee on the back of [Plaintiff]'s left shoulder to prevent him from rolling over and potentially striking a deputy." *Id.* at ¶ 11. Defendant Torres used "both of his hands to force [Plaintiff]'s left arm behind his back" while Defendant Saunders did the same with Plaintiff's right arm. *Id.*

Defendant Balay "placed a handcuff on [Plaintiff]'s right wrist" and Defendant Torres "secured the handcuffs to [Plaintiff]'s left wrist." *Id.* Defendant Warren "applied bodyweight with both of his knees to [Plaintiff]'s lower back area to keep [Plaintiff] from standing and continuing to fight." *Id.* Because Plaintiff was bleeding, Defendant Norie "placed a spit sock over [Plaintiff]'s head to prevent him from spitting or spraying blood on deputies." *Id.* Once restrained, Defendants escorted Plaintiff to the jail medical clinic via gurney. (ECF No. 78-3 ¶ 12). Plaintiff sustained a laceration above his right eye. *Id.*

### b. Plaintiff's Version of the Altercation

Plaintiff's SAC states that he "was on the ground being held down by Corp. Seeley #3663, Deputy Belay [sic] #0040, Deputy Norie #0132, Deputy Torres #5699, and Deputy Warren #7805." (ECF No. 55 at 3). Plaintiff states that he "was being tased repeatedly, and kicked repeatedly." *Id.* He continues that "[he] was in hand-cuffs when Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye until [Plaintiff] started to pour blood from his

face or right eye." *Id.*  Plaintiff attaches inmate grievances to his SAC, one of which states in pertinent part that he was "hit in [his] eye by one of the staff with his hand and punched 6-7 times while on the ground handcuffed[.]"  (Plaintiff Ex. 2).  In another grievance form, Plaintiff states that after this incident he suffered injuries to his "eye, back, neck and great mental destress [sic] that incapacitated [him] mentally and physically . . . ."  (Platiniff Ex 3).  Plaintiff's two additional grievances generally recount his allegations of excessive force.  (See Plaintiff Exs. 3 and 7).

**C. Medical Care Following the March 21, 2013 Altercation**

Medical records from San Diego Sheriff's Department on March 21, 2013, indicate that Plaintiff initially refused consent to repair the laceration, and would not cooperate for the motor examination or assessment of his wound.  (Def. Ex. I at 2).  Plaintiff eventually received six sutures without complications.  *Id.* at 2-3.

Later on March 21, 2013, employee Desilva reported that Plaintiff's sutures remained intact, the dressing was clean and dry, and there was no active bleeding from the wound.  (Def. Ex. J at 4).  Jail personnel checked and changed Plaintiff's dressing on March 21, 2013, *id.* at 5; March 23, 2013, *id.* at 6; March 24, 2013, *id.* at 7; and March 27, 2013, *id.* at 9.  Plaintiff refused consent to change the dressing on his laceration on March 22, 2013, *id.* at 5; and March 26, 2013, *id.* at 8.  On March 28, 2013, medical staff removed Plaintiff's sutures without complication, *id.* at 10, and checked him again the following day.  *Id.* at 11.

**D. Plaintiff is Charged for his Conduct on March 20, 2013 and March 21, 2013 and Enters Disciplinary Isolation**

On March 22, 2013, Deputy Campbell wrote a jail incident report documenting Plaintiff's March 20, 2013 violations of Inmate Rules and Regulations #101 (Inmate shall treat facility staff in a civil fashion), #103 (Inmates shall not assault any other inmate or staff), #105 (Inmate shall not take part in aggressive or boisterous activity) and #701 (Inmates shall not delay jail operations), which took place while Plaintiff was housed in the sobering cell.  (Def. Ex. N).  As a result of these charges, Plaintiff entered

security lockdown pending a disciplinary hearing. (Def. Ex. P). A hearing conducted pursuant to California Code of Regulations Title 15 Article 7 took place on March 24, 2013. (Def. Ex. R). Plaintiff received eight days disciplinary isolation and was released on April 1, 2013. *Id.*

Plaintiff was also charged for violating California Penal Code § 69 (resisting a peace officer with violence) and § 243 (c)(1) (battery on a peace officer causing minor injury). (Def. Ex. K; ECF No. 78-3 ¶ 12). On April 20, 2013, Plaintiff pled guilty to Penal Code § 69, a felony charge, for violently resisting an executive officer. (Def. Ex. M). The criminal complaint alleged,

> On or about March 21, 2013, DAVID BRYAN TURNER did unlawfully attempt by means of threats and violence to deter and prevent another who was then and there an executive officer from performing a duty imposed upon such officer by law, and did knowingly resist by use of force and violence said executive officer in the performance of his/her duty, in violation of PENAL CODE SECTION 69.

On April 30, 2013, Plaintiff signed a Plea of Guilty Form under penalty of perjury on admitting the following: "[He] did unlawfully prevent an officer from performing his duty with means of threats and violence."[1]  *Id.*  Subsequent to his guilty plea, in his statement to his probation officer regarding the altercation, Plaintiff stated: "I was getting mad. When they came to the door I was mad. It wasn't nothing towards them (deputies). I was toying with them like they were toying with me. It was spur of the moment. I didn't mean to hit nobody. I was just mad because I was locked up." (Def.

---

[1]      Defendants do not argue that any claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court nonetheless concludes that *Heck* is inapplicable on these facts, as Plaintiff's allegation is that he had ceased resisting and had been restrained in handcuffs before the excessive force was employed. *See Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (Finding that a § 1983 action was not barred, despite the prisoner's guilty plea to resisting arrest "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction); *see also Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) ("[I]f [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction. *Heck* is no bar."); *cf. Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under Cal. Penal Code § 148(a) (1) does not "bar a § 1983 claim for excessive force under *Heck* [if] the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.' ").

Ex. L at 3).  On May 29, 2013, Judge Moring sentenced Plaintiff to the upper term of three years in prison.  (Def. Ex. M).

**E. Plaintiff's Grievances**

Grievance forms are readily available and provided for all inmates to complete and submit, with three successive levels of subsequent review in which facility staff can resolve the grievance.  (ECF No. 78 at 21).  Each level of review provides the inmate with a written response and a resolution or reasons for its denial.  (ECF No. 78-4 ¶¶ 1-5; Def. Ex. T).

The first level of review is conducted by a first level supervisor.  (ECF No. 78 at 21).  If an inmate is not satisfied with the proposed resolution of his grievance at the first level, he can appeal to an intermediate level of review conducted by a sworn supervising officer designated as the jail facility's grievance review officer.  *Id.*  If an inmate is dissatisfied with the proposed resolution at that level of review, he can appeal the decision to the third and final level of review conducted by the Facility Commander. (ECF No. 78-4 ¶¶ 4-7; Def. Ex. T).

Plaintiff attached eight inmate grievances to his SAC, each of which will be discussed in the context of the causes of action to which they relate.

**a. Count One: Cruel and Unusual Punishment (Excessive Force)**

Plaintiff filed three inmate grievances recounting the altercation that took place on March 21, 2013 and alleging the use of unreasonable force.  (Plaintiff Exs. 2, 3, 7). A grievance filed on March 30, 2013, states that Plaintiff "was hit in [his] eye by one of the staff with his hand and punched 6 or 7 times while on the ground handcuffed[.]" A second grievance filed on April 16, 2013, requests an "Internal Affairs form" and "further investigation" regarding an "injury to [his] right eye."  (Plaintiff Ex. 7). Plaintiff filed his third grievance relating to Count One on May 1, 2014, stating that he sustained "injuries to his eye, back, neck" as well as "mental distress" as a result of "unreasonable force."  Plaintiff Ex. 3).

An undated lodgment appears to be a response to one of the three grievances, and

explains that the "force used during your altercation was deemed necessary for the circumstances to gain control over you and to protect [the staff] from your violent assault." (Plaintiff Ex. 1). Plaintiff also submits a "Notice of Rejection of Claim" from San Diego Office of County Counsel dated February 5, 2014. (Plaintiff Ex. 10). Plaintiff did not provide an explanation of this lodgment. According to the notice, it relates to an incident that took place on December 3, 2013. (Plaintiff Ex. 10). The incident at issue in this case took place on March 21, 2013, and the Court is not aware of any incidents at issue in this matter that took place on December 3, 2013, thus the relevance of this lodgment is unclear.

At the end of April, Plaintiff filed two inmate grievances describing continued back pain and headaches and requesting a CAT-scan. (Plaintiff Exs. 8, 9). According to San Diego Sheriff's Department Medical Chart, an employee referred Plaintiff to "MDSC" for back pain (Def. Ex. S at 1.), where he saw Steve Aguilar on May 2, 2013. *Id.* at 2-4.

### b. Count Two: Cruel and Unusual Punishment (Access to Courts)

As a result of Plaintiff's March 24, 2013 disciplinary hearing, Plaintiff received eight days isolation and was released on April 1, 2013. (Def. Ex. R.) Plaintiff's Count Two states that this period of isolation impacted his "access to the courts and to [his] lawyers." (ECF No. 55 at 4). Plaintiff states in an inmate grievance that, during this disciplinary isolation, he could not leave his cell for a period of twenty-four hours between March 30, 2013 and April 2, 2013, and he was not permitted to shower for "2 or 3" days. (Plaintiff Ex. 6). On April 1, 2013, Plaintiff filed an Inmate Grievance stating that he had not been given time to call his attorney regarding an upcoming trial. (Plaintiff Ex. 5).

### c. Count Three: Freedom of Religion

On April 7, 2013, Plaintiff filed an Inmate Grievance stating that he was "denied the right for [sic] religious services." (Plaintiff Ex. 4). His SAC explains that he needed to attend services to help him feel better after the altercation with the officers.

(ECF No. 55 at 5)/

## III. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## B. Plaintiff's First Cause of Action: Use of Excessive Force

### 1. Parties' Arguments

Defendants contend that their use of force against Plaintiff was reasonable and justified based on Plaintiff's assaultive behavior. (ECF No. 78 at 17:26-18:4). Plaintiff admitted in his deposition that he threw punches at the air (Def. Ex. H at 43:15) and tried to remove the taser darts from his clothing. *Id.* at 44:13-20. The video lodged with the Court shows that the deputies pushed Plaintiff back into the cell and attempted to close the cell door, but Plaintiff blocked the door from closing and struck in the direction of the deputies. (Def. Ex. G, Clip No. 1). The Court notes that the video footage is only helpful in confirming Plaintiff's initial combative behavior. The camera angle does not reveal anything that took place inside Plaintiff's cell, where the majority of the altercation took place.

Plaintiff alleges that Defendants Seeley, Balay, Torres, Warren and Norie used excessive force when they "repeatedly" "tased" and "kicked" him. (ECF No. 55 at 3). Plaintiff further contends that after he was handcuffed "Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye, until [Plaintiff] started to pour blood from his face or right eye." (ECF No. 55 at 3); *see also* (Plaintiff Ex. 2 ("I was hit in my eye by one of the staff with his hand and punched 6-7 times while on the ground handcuffed")).

### 2. Standard

The Eighth Amendment's prohibition against the malicious or sadistic use of force, *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992), does not apply "until after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989). Pretrial detainees, which was Plaintiff's status at the time of the altercation, are instead protected by substantive due process, and may also challenge the use of force against them under the Fourteenth Amendment if that force is so excessive that it amounts to

punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *see also Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) ("The more protective fourteenth amendment standards apply to conditions of confinement when detainees . . . have not [yet] been convicted of a crime." (Citation omitted)).  Thus, pretrial detainees, "retain at least those constitutional rights that we have held are enjoyed by convicted prisoners."  *Bell*, 441 U.S. at 545; *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991) (en banc).

A pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).  Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Because this "balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")).  But, where there is no need for force, any force used is objectively unreasonable for constitutional purposes.  *See P.B. v. Koch*, 96 F.3d 1298, 1303–04 n. 4 (9th Cir. 1996).

### 3. Discussion

#### a. The Relationship Between the Force Needed and the Force

**Used**

One factor the Court considers in analyzing an excessive force claim is the relationship between the force needed under the circumstances and the force used. Plaintiff has conceded, by pleading guilty to Cal. Penal Code § 69, that he "knowingly resist[ed] by use of force and violence." (Def. Ex. M). Plaintiff's uncooperative behavior is corroborated by his deposition testimony where he admits to punching at the air. (Def. Ex. H at 43:15). In response to Plaintiff's combative behavior, Riley's declaration states that Defendant Seeley "used both of his hands to grab [Plaintiff's] feet" (ECF No. 78-3 ¶ 8) and "placed leg chains on [Plaintiff's] ankles." *Id.* at ¶ 10. Defendant Balay "used both of his hands to take cross [sic] [Plaintiff's] legs and applied downward pressure to prevent him from twisting or being able to kick at deputies." *Id.* Defendant Norie "used both of his hands and applied bodyweight to the back of [Plaintiff's] legs," and "placed his right knee on the back of [Plaintiff's] left shoulder to prevent him from rolling over and potentially striking a deputy." *Id.* at ¶ 11. Defendant Torres "delivered four knee strikes to the left side of [Plaintiff's] lower back." (ECF No. 78-3 ¶ 9). Riley's declaration also states that Defendant Saunders "deliver[ed] two closed first [sic] strikes with his right hand to the right side of [Plaintiff's] face[, but] the strikes were not effective." (ECF No. 78-3 ¶ 9). Because Plaintiff continued to "struggle, kick and attempt to punch[,]" Saunders delivered a knee strike to Plaintiff's upper chest. *Id.*

Plaintiff's SAC states that he "was on the ground being held down by Corp. Seeley #3663, Deputy Belay [sic] #0040, Deputy Norie #0132, Deputy Torres #5699, and Deputy Warren #7805." (ECF No. 55 at 3). Plaintiff states that he "was being tased repeatedly, and kicked repeatedly." *Id.* He continues that "[he] was in hand-cuffs when Corp. Saunders #7294 walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye until [Plaintiff] started to pour blood from his face or right eye." *Id.* Plaintiff states in an inmate grievance that he was already in handcuffs when "one of the staff" punched him in the head six to seven times. (Plaintiff

Ex. 2).  In another grievance form, Plaintiff states that after this incident he suffered injuries to his "eye, back, neck and great mental destress [sic] that incapacitated [him] mentally and physically . . . ."  (Plaintiff Ex 3).

Based on the contradictory testimony, the Court finds that genuine issues of material fact exist as to whether Defendants use of force under the circumstances was justified, or instead, was so excessive that it amounted to punishment.  *Bell*, 441 U.S. at 535; *Jones*, 393 F.3d at 934.  A rational trier of fact could believe either that Defendants actions were "punitive," i.e., that they were excessive in relation to a legitimate need to ensure jail security, *id.*, or that they constituted a reasonable and appropriate response to the threat Plaintiff posed.  *Id.*;*see also Anderson*, 477 U.S. at 255 (at summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### b. Extent of Injury

Another factor the Court considers is the extent of the injury suffered by Plaintiff.  Plaintiff contests that he suffered from eye, back, and neck pain.  (Plaintiff's Ex. 3, 8, 9).  It is uncontested that Plaintiff received six stitches above his right eyebrow to close the laceration incurred during the incident with Defendants.  (ECF No. 78 at 7:11-13, Def. Ex. I).  The uncontested medical evidence supports a finding that the laceration to Plaintiff's eye was more than *de minimus* and factors against Defendants' argument that they applied force in good faith.  Therefore, the extent-of-the-injury factor weighs in favor of Plaintiff.

### c. Efforts to Temper the Amount of Force

The Court also considers any efforts by Defendants to temper the force used against Plaintiff.  Here, Defendants submit evidence that they incrementally increased the level of force used to restrain Plaintiff.  When Plaintiff initially exited the holding cell, Defendant Seeley ordered him to go back into his cell.  (ECF No. 78 at 4:8-12; *see also* Def. Ex. G, Clip No. 1).  Plaintiff responded by striking in the direction of

Defendant Seeley.  (Def. Ex. G, Clip No. 1; Def. Ex. H at 43:15).  Defendant Seeley drew his taser, but did not deploy it because Plaintiff had started to retreat back into the cell.  (ECF No. 78 at 4:25-27; Def. Ex. G, Clip No. 1).  Defendant Seeley then placed "leg chains on [Plaintiff]'s ankles," and "Defendant Balay used both of his hands to take cross [sic] [Plaintiff]'s legs" to prevent him from "twisting or being able to kick at deputies." *Id.* at ¶ 10.  Defendant Norie used both of his hands to apply "bodyweight to the back of [Plaintiff]'s legs" and "placed his right knee on the back of [Plaintiff]'s left shoulder to prevent him from rolling over and potentially striking a deputy." *Id.* at ¶ 11.  According to Riley's declaration, Defendant Saunders "deliver[ed] two closed first [sic] strikes with his right hand to the right side of [Plaintiff]'s face[, but] the strikes were not effective." ECF No. 78-3 ¶ 9.  Because Plaintiff continued to "struggle, kick and attempt to punch[,]" Saunders delivered a knee strike to Plaintiff's upper chest. *Id.*

Plaintiff admits that he used force initially, but contends that he was being "held down" by Defendants Seeley, Balay, Torres, Warren and Norie and that he was "repeatedly" "kicked" and "tased."  (ECF No. 55 at 3).  Further, Plaintiff states Defendant Saunder hit him in the head after Plaintiff was handcuffed. *Id.*

Based on the contradictory testimony, the Court finds that genuine issues of material fact exist as to the effort made by Defendants to temper the amount of force employed against Plaintiff.

### d. The Threat Reasonably Perceived by Defendant

The Court also looks at the threat perceived by the responsible officials. Defendants argue that it was reasonable for them to perceive Plaintiff's actions as threatening because (1) Plaintiff initiated the confrontation with Defendants by challenging institutional rules when he refused verbal instructions to return to the holding cell, (2) Plaintiff's actions created the potential to incite other unrestrained inmates to disorder, (3) and Plaintiff attacked Defendants Seeley, Warren, and Deputy

Lotko[2].  (ECF No. 78 at 19:27-20:2).  Defendants further claim that Plaintiff fought with the deputies, and resisted their efforts to handcuff him despite being ordered to stop.  (ECF No. 78 at 20:2-5).  Plaintiff's uncooperative behavior is corroborated by his deposition testimony where he admits to punching at the air (Def. Ex. H at 43:15) as well as the video footage that shows Plaintiff refusing to re-enter his cell at the request of the deputies.  (Def. Ex. G, Clip No. 1).

Plaintiff's description of the altercation, however, is that he was "held down" and "repeatedly" "tased" and "kicked."  (ECF No. 55 at 3).  Plaintiff also contends that he had already been restrained "in handcuffs" when Defendant Saunders "walked in the holding cell, and began punching and kicking [Plaintiff] in his head or right eye." (ECF No. 55 at 3).  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.  Based on the contradictory testimony, the Court finds that genuine issues of material fact exist as to the threat reasonably perceived by Defendants when they employed force against Plaintiff.

## C. Qualified Immunity Regarding Claim of Excessive Force

Defendants argue that they are entitled to qualified immunity because they did not use excessive force towards Plaintiff.  In the alternative, Defendants argue that even if the Court finds Plaintiff's constitutional rights were violated, they are still entitled to qualified immunity because a reasonable person in their position would have believed their conduct lawful. (ECF No. 78 at 18:19-19:23.)

Qualified immunity is not merely a defense to liability, but rather a bar to suit, to avoid the "burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  Courts make this determination by asking whether the officer's conduct violated a constitutional right.  *See id.*  If no constitutional right is violated, there is "no necessity for further inquiries concerning qualified immunity." *Id.*  If a right is violated, the court

---

[2]     Deputy Lotko is identified by Defendants in their Motion for Summary Judgment as being present during the altercation, but he is not named as a Defendant in Plaintiff's SAC.

inquires whether that right was clearly established at the time of the incident. *See id.* A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Lower courts may exercise their sound discretion in deciding the order in which to address Saucier's two prongs "in light of circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Because of the factual disputes that Plaintiff has identified, Defendants are not entitled to summary judgment based upon qualified immunity. *See Santos v. Gates*, 287 F.3d 846, 855 n. 12 (9th Cir.2002) (declining to grant qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law, may depend upon the jury's resolution of disputed facts and the inferences it draws therefrom" (citation omitted)).  If Plaintiff's version of the facts ultimately prevails, Defendants may not be entitled to qualified immunity because the law is clearly established that a reasonable officer should have known that employing force on a pretrial detainee who was either held down and/or handcuffed is a violation of constitutional rights.

**D. Exhaustion of Available Administrative Remedies Regarding Plaintiff's Count Two (Cruel and Unusual Punishment) and Count Three (Freedom of Religion)**

Defendants move for summary judgment as to Counts Two and Three on the grounds that Plaintiff failed to exhaust his available administrative remedies prior to bringing this suit as required by 42 U.S.C. § 1997e.  It is well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant jail officials have the burden of raising and proving. *See Jones v. Bock*, 594 U.S. 199, 216 (2007); *Albino v. Baca*, 747 F.3d 1162, 1168-69 (2014).

The Prison Litigation Reform Act ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under

section1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525, and to encompass inmate suits about both general circumstances and particular episodes of prison life—including incidents of alleged excessive force.  *Id.* at 532.  Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies before he filed suit, even if he fully exhausts while the suit is pending).

The County of San Diego Sheriff's Department Detention Services provides inmates the right to administratively appeal any issue related to "any condition of confinement." (*See* Def. Ex. T, Policy and Procedure, § N.1, grievance procedure).  In order to exhaust available administrative remedies within this system, an inmate must proceed through the following levels: (1) informal resolution, (2) formal written appeal on J-22 Inmate Grievance forms or other writing materials, (3) second level appeal to Grievance Review officer, and (4) third level of appeal to Facility Commander.  *Id*.

In this case, Count Two in Plaintiff's SAC alleges violations of Plaintiff's "[a]ccess to courts [and] freedom from cruel and unusual punishment" arising from time spent in disciplinary segregation wherein Plaintiff claims he was denied use of the phone and the shower. (ECF No. 55 at 4).  On April 1, 2013, Plaintiff filed an inmate grievance stating that he had not been given time to call his attorney about an upcoming trial. (Plaintiff Ex. 5).  In an inmate grievance filed on April 2, 2013, Plaintiff states

1   that, during this disciplinary isolation, he could not leave his cell for a period of

2   twenty-four hours between March 30, 2013 and April 2, 2013, and he was not permitted

3   to shower for "2 or 3" days. (Plaintiff Ex. 6).          Count Three alleges violations of

4   Plaintiff's "freedom of religion [and] freedom of association," based on a claim that

5   Plaintiff "was denied the rights to go to religious service." (ECF No. 55 at 5). On April

6   7, 2013, Plaintiff filed an Inmate Grievance that he was "denied the right for religious

7   services." (Plaintiff Ex. 4).

8          Defendants argue that Plaintiff failed to exhaust his available administrative

9   remedies as to Counts Two and Three, by only filing grievances at the first level. As

10   support, Defendants submit a declaration from County Sheriff's Sgt. Dorothy Patterson

11   which describes the administrative grievance procedure in the San Diego County jails

12   by which all inmate grievances are addressed. (ECF No. 78 at 21). According to that

13   declaration, grievance forms are readily available and provided for all inmates to

14   complete and submit, with three successive levels of subsequent review in which

15   facility staff can resolve the grievance. *Id.* Each level of review provides the inmate

16   with a written response and a resolution or reasons for its denial. (ECF No. 78-4 ¶¶ 1-5;

17   Def. Ex. T). The first level of review is conducted by a first level supervisor. (ECF No.

18   78 at 21). If an inmate is not satisfied with the proposed resolution of his grievance at

19   the first level he can appeal to an intermediate level of review conducted by a sworn

20   supervising officer designated as the jail facility's grievance review officer. *Id.* If an

21   inmate is dissatisfied with the proposed resolution at that level of review, he can appeal

22   this to the third and final level of review conducted by the Facility Commander. (ECF

23   No. 78-4 ¶¶ 4-7; Def. Ex. T.)

24          Defendants have met their burden to show that there is no evidence in the record

25   that Plaintiff exhausted the administrative remedies as to Counts Two and Three.

26   However, it is also Defendants burden to prove that "there was an available remedy."

27   *Williams v. Paramo*, __ F.3d __, 2015 WL 74144 at * 7 (9th Cir. 2015). County

28   Sheriff's Sgt. Dorothy Patterson's declaration describing the administrative grievance

procedure in San Diego County jails sufficiently demonstrates that there was an available remedy, and Plaintiff had opportunity to know of that remedy. (*See* ECF No. 78-4). Once the defendant meets that burden, the plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Plaintiff offers no rebuttal to this showing by Defendants. The Court also notes that Plaintiff was able to successfully navigate the administrate remedy procedures as to Count One, supporting a finding that he knew of the additional levels of review, yet failed to utilize them as to Counts Two and Three. (ECF No. 78 at 21).

Plaintiff has failed to rebut Defendants' showing that he did not properly exhaust his administrative remedies regarding his second and third claims prior to bringing this action. Thus, the Court grants Defendants motion for summary judgment based on failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

**E. Viability of Civil Rights Claims Against Defendant San Diego County**

Defendants argue that Plaintiff's allegations of constitutional violations involve only the individual deputies, and do not mention any involvement by the County or cite any purported policy of the County. (ECF No. 78 at 12:6-14). As to Count One, Plaintiff identifies "Corp. Seeley [], Deputy Balay [], Deputy Norie [], Deputy Torres [], Deputy Warren []" and "Corp. Saunders []" as using "excessive force." (ECF No. 55 at 3) For Count Two, Plaintiff states that the "County of San Diego employee's [sic] actions and omissions amounted to deliberate indifference to serious medical needs at Central Jail in the scope of their employment." *Id.* at 4. For Count Three, Plaintiff states that he "was denied the rights to go to religious service, by employee's [sic] at San Diego County, Central Jail in the scope of there [sic] employment." *Id.* at 5. Neither Plaintiff's SAC nor his opposition to Defendants' Motion for Summary Judgment identify a policy or practice within San Diego County responsible for the conduct giving rise to his claims.

A plaintiff seeking to impose liability on a county under § 1983 must identify a

municipal "policy" or "custom" that caused his injury. *Bryan County Commis v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Specifically, the plaintiff must allege: (1) the plaintiff "possessed a constitutional right of which he was deprived;" (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the "moving force" behind or cause of the constitutional violation. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (citing *Van Ort*, 92 F.3d at 835).

Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011). Allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom. *See Navarro v. Block*, 72 F.3d 712, 714.

In this case, no evidence in the record, nor any allegation in Plaintiff's SAC, suggest that Defendants' actions were "caused by" any custom, policy or practice of the County of San Diego. *See Monell*, 436 U.S. at 694; *Brown*, 520 U.S. at 405 (noting that "[w]here a plaintiff claims that the municipality has not directly inflicted injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employee"). Plaintiff specifically premises the gravamen of this action on the acts of individual Sheriff Deputy's application of force against him on a particular occasion. A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a "single occurrence of [allegedly] unconstitutional action by a non-policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Because Plaintiff has not put forth any evidence that Defendants alleged actions were the result of a custom or policy in San Diego County, the Court grants summary judgment as to all claims against San Diego County.

**III. Conclusion**

IT IS HEREBY ORDERED that the Report and Recommendation (ECF NO. 93) is adopted in part and not adopted in part.  With respect to Plaintiff's second and third claims, and all claims against San Diego County, the Report and Recommendation is adopted; otherwise the Report and Recommendation is not adopted.  Defendants' Motion for Summary Judgement (ECF No. 78) is granted in part and denied in part as follows:

1) Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies regarding Plaintiff's Second and Third Claims is granted.

2) Defendant's Motion for Summary Judgment regarding all claims against San Diego County is granted.

3) Defendants' Motion for Summary Judgment regarding Plaintiff's First Claim of excessive force as to Defendants Seeley, Balay, Torres, Warren, Norie, and Saunders is denied.

4) Defendants' Motion for Summary Judgment regarding qualified immunity for Plaintiff's First Claim of excessive force as to Defendants Seeley, Balay, Torres, Warren, Norie, and  Saunders is denied.

DATED:  January 19, 2016

William Q. Hayes
WILLIAM Q. HAYES
United States District Judge